IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Civil Action No. 4:20-cv-143-ALM-KPJ |
| | § |
| ADVANCED TELE-GENETIC | § |
| COUNSELING, LLC, *et al.*, | § |
| | § |
| Defendants. | § |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants Partner First, LLC, and Raymond Todd Orlandi's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim ("Partner and Orlandi's MTD") (Dkt. #18); the Motion to Dismiss Under Federal Rule of Civil Procedure 12(b) and Memorandum of Law in Support of Defendants' Motion Specialty Drug Testing, L.L.C., Susan Fluitt, and George Fluitt ("Specialty and Fluitts' MTD") (Dkt. #25); and Advanced Tele-Genetic Counseling, LLC's, Motion to Dismiss, to which Jeffrey Turner and Elizabeth Turner join[1] ("ATGC and Turners' MTD") (Dkt. #27) (collectively, the "Motions"). Plaintiff filed a single response addressing all three Motions to Dismiss. *See* (Dkt. #29). ATGC, joined by the Turners, filed a reply (Dkt. #30).

Upon consideration, the Motions (Dkts. #18, #25, and #27) are **GRANTED**.

I.  **BACKGROUND**

Defendant Partner First, LLC ("Partner") is an assumed name of Baker Orlandi Ventures, LLC ("Baker Ventures"), which it asserts is a Florida limited liability company with its principal

---

[1] *See* (Dkt. #45).

1

place of business in Kentucky. *See* (Dkt. #18 at p. 2). Partner further presents that Baker Orlandi Ventures, LLC, has two members who are residents of the Commonwealth of Kentucky. *See* (Dkt. #18 at p. 2). Plaintiff misidentifies in his Complaint that Partner is a Kentucky corporation. *See* (Dkt. #1 at pp. 1–2).

Defendant Raymond Todd Orlandi ("Orlandi") is a member of Baker Orlandi Ventures, LLC and is Kentucky resident. *See* (Dkt. #1 at p. 2; Dkt. #18 at p. 7; Dkt. #18, Exhibit 3 at p. 2).

Defendant Specialty Drug Testing, L.L.C., ("Specialty") presents that it is a Louisiana limited liability company with its primary place of business in Ouichita Parish, Louisiana. *See* (Dkt. #25 at p. 3). Plaintiff misidentifies Specialty as a Louisiana corporation. *See* (Dkt. #1 at p. 2).

Defendants Susan and George Fluitt (the "Fluitts") assert that they are members and officers of Specialty. *See* (Dkt. #25 at p. 3). The Fluitts are residents of Ouichita Parish, Louisiana. *See* (Dkt. #1 at p. 2; Dkt. #25 at p. 3).

Defendant Advanced Tele-Genetic Counseling, LLC, ("ATGC") presents that it is a Kentucky limited liability company with its principal place of business in Kentucky. *See* (Dkt. #27 at pp. 2–3). ATGC states that it has two members, each of whom reside in Kentucky. *See* (Dkt. #27 at p. 3). Plaintiff misidentifies ATGC as a Kentucky corporation. *See* (Dkt. 1 at p. 1).

Defendants Jeffrey and Elizabeth Turner (the "Turners") assert that they are members of ATGC. *See* (Dkt. #27 at p. 3). The Tuners are residents of Kentucky. *See* (Dkt. #1 at p. 1; Dkt. #27 at p. 3).

On February 26, 2020, Plaintiff, proceeding *pro se*, filed an original complaint against each of the above Defendants and one-to-five John/Jane Does, asserting violations of the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b) and (c), and Texas Business and Commerce Code § 305.053.  *See* (Dkt. #1).

Plaintiff alleges he received at least fourteen calls to his cell phone from spoofed caller ID's initiated by an automated telephone dialing system and containing a pre-recorded message. *See* (Dkt. #1 at p. 6).  Plaintiff alleges the calls were made without prior consent and unrelated to any emergency purpose.  *See* (Dkt. #1 at p. 8).  Plaintiff alleges that he suffered injuries including, but not limited to: "Reduced Device Storage space, Reduced data plan usage, Invasion of privacy, Lost time tending to text messages,[2] Decreased cell phone battery life, More freqent [sic] charging of my cell phone resulting in reduced enjoyment and usage of my cell phone, Reduced battery usage, Annoyance, Frustruation [sic], [and] Anger."  (Dkt. #1 at p. 8).

The Motions argue Plaintiff's claims should be dismissed for lack of personal jurisdiction. *See* (Dkt. #18 at p. 4; Dkt. #25 at p. 14; Dkt. #27 at p. 4).  The Motions also argue Plaintiff fails to state a claim against Defendants.  *See* (Dkt. #18 at p. 3, Dkt. #25 at p. 5, Dkt. #27 at p. 12).

Plaintiff presents a chart of calls he allegedly received and caller ID numbers matching each call.  *See* (Dkt. #1 at p. 7).  However, the chart does not tie any of the phone numbers to any of Defendants. *See* (Dkt. #1 at p. 7).  Plaintiff alleges that on May 9, 2019, he received two calls during which an agent discussed undergoing a cancer screening to determine if Plaintiff would qualify for Medicare.  *See* (Dkt. #1 at pp. 6–7).  Plaintiff alleges the caller did not identify him or herself with any of Defendants in this case and Plaintiff does not specifically assert that these two calls were made by any Defendant. *See* (Dkt. #1 at pp. 6–7).

---

[2] Though listed as an associated injury, Plaintiff does not actually allege in his Complaint that any Defendant sent him an unwanted text message.  *See* (Dkt. #1).

3

Plaintiff specifically alleges that he received a call from ATGC on May 29[3] from 629-201-7313.  *See* (Dkt. #1 at p. 7).  Plaintiff alleges, in the presented chart, that the only call he received on May 29, 2019, was not, however, from 629-201-7313, but from 629-201-7299.  *See* (Dkt. #1 at p. 7).  Additionally, Plaintiff contends the caller addressed him only as "Mr. [McRae]."  *See* (Dkt. #1 at p. 7).  Plaintiff does not describe the content of the conversation other than referencing a "cancer screening kit."  *See* (Dkt. #1 at p. 7).  Plaintiff does not state how this topic was raised or who raised it.  *See* (Dkt. #1 at p. 7).[4]  Partner asserts, and Plaintiff does not deny, Leland McRae is an attorney licensed in Texas who represents Plaintiff in eight cases in the Eastern District of Texas and one in the Western District of Texas.  *See* (Dkt. #18 at p. 1).

Plaintiff further alleges that he also received a "cancer screening kit" in the mail.  *See* (Dkt. #1 at p. 7).  Plaintiff claims the screening kit arrived in an envelope from Partner and contained a pre-paid envelope addressed to Partner from Specialty.  *See* (Dkt. #1 at p. 7).  According to Plaintiff, these envelopes implicate Specialty and Partner as "liable parties on whose behalf the calls were being placed."  *See* (Dkt. #1 at p. 7). Plaintiff further avers the envelope contained documents bearing the name of ATGC, which indicates the calls were also made on behalf of and directly by ATGC.  *See* (Dkt. #1 at p. 7).

Plaintiff cites two exhibits in his Complaint: "an envelope  (Ex A) addressed from Partner First, LLC[,]" which contained a cancer screening kit, and "a pre-paid envelope (Ex B) that the Plaintiff was supposed to send his DNA sample to, which was addressed to Partner First, LLC in Crestwood, KY and was addressed from Specialty Drug Testing, LLC in Louisiana," that was contained inside the cancer screening kit.  *See* (Dkt. #1 at p. 7).  Plaintiff did not actually attach

---

[3] Plaintiff does not assert the year he received this call.
[4] "On May 29th the Plaintiff [received] a call directly from the Defendants AT-GC in which the defendants addressed the Plaintiff as Mr. Mcrae and a cancer screening kit the Plaintiff had [received] in the mail" (Dkt. #1 at p. 7).

any materials to his Complaint or submit them to the Court after Defendants highlighted the lack of any exhibit attached to the Complaint. Partner and Orlandi, though, submitted materials produced by Plaintiff to their counsel, which appears to be a picture of a mailing label. *See* (Dkt. #18 at p. 13; Dkt. #18, Exhibit 2). The label is addressed to Leland McRae at 1952 N. Lorraine Ave, Wichita, Kansas, 67214-2323, from Partner, dated May 20, 2019. *See* (Dkt. #18, Exhibit 2). Based on the label, the package at issue was sent nine days *before* the date Plaintiff alleges he received a call from ATGC—the only Defendant whom he specifically alleges called him. In Plaintiff's response, Plaintiff reiterates he was offered genetic testing services from ATGC on "the call." *See* (Dkt. #29 at p. 4).[5]

Counsel for Partner and Orlandi submitted an affidavit clarifying the package's mailing and Mr. McRae's relationship to this case. *See* Affidavit of Katherine Reisz, (Dkt. #18-1). Counsel testifies that, during a telephone conference to discuss the Rule 26(f) conference, Counsel asked Plaintiff how he received a package directed to Leland McRae in Wichita, Kansas. *See* (Dkt. #18, Exhibit 1 at p. 2). Counsel represents Plaintiff responded as follows: Mr. McRae gave the package to Plaintiff; Plaintiff knew Mr. McRae because they went to high school together; and, when asked whether Plaintiff misrepresented himself as Mr. McRae when receiving a call, Plaintiff

---

[5] Plaintiff's allegations are fundamentally irreconcilable. In the Complaint, Plaintiff alleges only a single call with ATGC, on May 29. *See* (Dkt. #1 at p. 7). In his response, Plaintiff states that he was "offered Genetic testing services by Defendant ATGC during the call." (Dkt. #29 at p. 4). Plaintiff also states that he told "the caller to send the testing kit to Kansas, and indeed a cancer screening kit was sent to Kansas, just as the Plaintiff indicated to the overseas caller." (Dkt. #29 at p. 2). Plaintiff asserted, in his Complaint, that on May 9, 2019, he received a call from someone who asked questions "about cancer screening and to evaluate if the Plaintiff would qualify for [Medicare]." (Dkt. #1 at p. 7). Plaintiff stated that this individual did not identify themselves as being affiliated with any Defendant. (Dkt. #1 at p. 7). It is unclear when Plaintiff, therefore, refers to "the call," whether he is referencing a May 9, 2019, call or a call on May 29. Moreover, Plaintiff states that on May 29, he discussed a cancer screening kit Plaintiff had received in the mail, but the mailing label indicates that the package was not mailed to Plaintiff, but to Leland Mcrae in Wichita, Kansas. *See* (Dkt. #18, Exhibit 2). Therefore, it is also unclear if Plaintiff is consistently referring to the same package in his allegations.

5

asserted it was irrelevant even if he had misrepresented himself. *See* (Dkt. #18, Exhibit 1 at pp. 2–3).

In his response, Plaintiff does not dispute Reisz's account, but merely contends it is improper hearsay evidence. *See* (Dkt. #29 at p. 3). Plaintiff further argues he "is permitted to impersonate someone to investigate claims before filing a lawsuit and is required to conduct an investigation under rule 11." *See* (Dkt. #29 at pp. 3–4). Plaintiff suggests that Defendants should answer for where they obtained the personal and confidential information related to "Mary [McRae]." *See* (Dkt. #29 at p. 1). Plaintiff also states ATGC fails to explain where it obtained the "personal, confidential information relating to Mary McRae if not from the overseas telemarketers making illegal calls." *Id.* at p. 4. None of the Motions to Dismiss reference a "Mary [McRae]," but Partner and Orlandi suggest the package at issue was mailed to Mr. McRae at the home of his mother in Wichita, Kansas. *See* (Dkt. #18 at p. 2). Counsel for Partner and Orlandi present they have attempted to contact Mr. McRae several times regarding his knowledge of Plaintiff's representations and how Plaintiff came to be in possession of the package at issue, but, thus far, Mr. McRae has not responded to their inquiries. *See* (D+kt. #18 at pp. 1–2).

Orlandi provides an affidavit stating that as a member of Baker Ventures, the entity has no employee, office, or bank account in Texas and has no contract with any person or entity residing in Texas. *See* (Dkt. #18, Exhibit 3 at p. 2). The Turners provide affidavits stating, as members of ATGC, they have never provided services to Plaintiff or Mr. McRae; they have no property, office, employee, or bank account in Texas; and they do not make telemarketing calls to Texas or contract with telemarketers to call Texas. *See* (Dkt. #27, Exhibit 1 at p. 1; Dkt. #27, Exhibit 2 at pp. 1–2). The Turners further assert neither they nor ATGC have contracted with Texas corporations to sell testing services, spoofed a caller ID or otherwise distorted its phone number, authorized any

6

company to call anyone using an automatic telephone dialing system or prerecorded messages, called Plaintiff, contracted with a foreign call center, or sold or provided cancer screening kits. *See* (Dkt. #27, Exhibit 1 at p. 2; Dkt. #27, Exhibit 2 at pp. 1–2).

Plaintiff did not timely file a response to any of the Motions to Dismiss. While it is unclear exactly when Plaintiff received service of the Motions, Plaintiff's response was filed more than two months after Partner and Orlandi's MTD and Specialty and Fluitts' MTD were filed and more than a month after ATGC and Turners' MTD was filed. Plaintiff did not seek leave of Court to file out of time or make any effort to explain his late filing.[6]

## II.   LEGAL STANDARD

### A. PERSONAL JURISDICTION

Rule 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the defendant. *Holmes v. New Logic Bus. Loans Inc.*, 2015 WL 12748311, at *1 (E.D. Tex. Oct. 7, 2015); FED. R. CIV. P. 12(b)(2). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden." *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003)); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's

---

[6] Though the Court will consider Plaintiff's response, the Court is not required to do so. Pursuant to the Eastern District of Texas' Local Rules, "a party's failure to oppose a motion in the manner prescribed [in Local Rule CV-7(d–e)] creates a presumption that the party does not controvert the arguments set out by movant and has no evidence to offer in opposition to the motion." LOCAL RULE CV-7.
.

7

favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). However, the Court need not "credit conclusory arguments, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction. First, "the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant," and second, the court must establish "whether the exercise of jurisdiction is consistent with due process under the United States Constitution." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 477 (E.D. Tex. 2019) (Mazzant, J.); *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Texas long-arm statute extends "to the constitutional limits;" thus, the Court need only consider "whether exercising personal jurisdiction over the defendant offends due process." *Clemens*, 615 F.3d at 378 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)). The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a non-resident defendant when the defendant (a) has "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (b) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id*.

### B.  FAILURE TO STATE A CLAIM

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b). Because dismissals under Rule 12(b)(6) are viewed with disfavor, a court must accept as true all well-pled facts, "even if doubtful or suspect," contained in the plaintiff's complaint and view them in the light most favorable to the

plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020).  A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss for failure to state a claim, the court's review is limited to the complaint, any documents attached to the complaint, and any document attached to the motion to dismiss that are central to the claim and referenced by the complaint.  *See Lone Star Fund (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.   ANALYSIS

The Court begins by analyzing whether its exercise of personal jurisdiction over the non-resident Defendants satisfies due process.  First, the Court will consider whether minimum contacts have been established.  Second, the Court will consider whether the exercise of jurisdiction over Defendants satisfies fair play and substantial justice.  *See, e.g.*, *Cunningham,* 359 F. Supp. 3d at 477.

Minimum contacts may give rise to either general or specific jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction exists where the defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Daimler AG*

*v. Bauman*, 571 U.S. 117, 139 (2014).  Specific jurisdiction arises where the defendant's contacts with the forum "arise from, or are directly related to, the cause of action." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

### A.  GENERAL JURISDICTION

In order for a court to have general jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must be so continuous and systematic that the defendant is "essentially at home" in the forum state.  *See Daimler AG*, 571 U.S. at 137.  The paradigm state in which an individual defendant is "at home" is the state of his domicile.  *See id.*  Domicile is generally the state in which the non-resident defendant lives and works, though courts also consider factors including "where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *See Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).  Generally, a corporation's domicile "falls into two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business."  *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020).  It is "incredibly difficult" to establish general jurisdiction in a forum other than the one in which a defendant is domiciled.  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).  A non-resident defendant's contacts with the forum state will only support a finding of general jurisdiction if the contacts are so substantial that the defendant is essentially at home in that state.  *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 448 (1952).

As previously stated, none of the entity Defendants were incorporated in Texas, located in Texas, or have a principal place of business in Texas.  *See* (Dkt. #1 at pp. 1–2; Dkt. #18 at pp. 2, 7; Dkt. #18, Exhibit 3 at p. 2; Dkt. #25 at pp. 3, 16; Dkt. #27 at pp. 2–3; Dkt. #27, Exhibit 1 at pp.

1–2). Additionally, none of the individual Defendants reside or work in Texas. *See* (Dkt. #1 at pp. 1–2; Dkt. #18-3 at p. 2; Dkt. #25 at p. 16; Dkt. #27 at pp. 2–3; Dkt. #27, Exhibit 1 at pp. 1–2). Plaintiff does not present any meaningful argument to support general jurisdiction. Plaintiff states generally the Court "has general personal jurisdiction over the [Defendants] because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and [they] sell goods and services to Texas residents, including the Plaintiff." (Dkt. #1 at pp. 2–3). Plaintiff also states that "Defendants have contracted with multiple Texas corporations to sell the testing services the corporations offer to Texas residents." (Dkt. #1 at p. 3).

In the factual allegations, however, Plaintiff states only that fourteen calls were received—none of which he attributes to a specific Defendant—and that ATGC made a single call to Plaintiff; however, Plaintiff did not allege ATGC purposefully directed such call to him in Texas. *See* (Dkt. #1 at p. 7). ATGC contends it does not make telemarketing calls to Texas or contract with telemarketers to call Texas; does not contract with Texas corporations to sell testing services; has never spoofed a caller ID or otherwise distorted its phone number; has never authorized any company to call anyone using an automatic telephone dialing system or prerecorded message; has never called Plaintiff or authorized or directed anyone to contact Plaintiff; and has never contracted with a foreign call center. *See* (Dkt. #27, Exhibit 1). ATGC supports these assertions with affidavits. *See* (Dkt. #27, Exhibit 1; Dkt. #27, Exhibit 2).

Plaintiff does not adequately rebut the sworn declarations or arguments asserted by Defendants. Plaintiff provides no support for allegations that Defendants have contacts that are so substantial as to support a finding of domicile in Texas. *See Daimler AG*, 571 U.S. at 139 (holding that the California court did not have jurisdiction over the defendant corporation with multiple California-based facilities and substantial sales in California because its contacts were not so

11

"continuous and systematic" as to render the defendant at home in California). Thus, the Court concludes it may not exercise general jurisdiction over the Defendants.

### B. SPECIFIC JURISDICTION

Specific jurisdiction exists when a nonresident defendant has purposefully directed contacts at the forum state and the alleged injury arises out of or relates to those contacts. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). The relevant contacts are those the defendant himself creates with the forum state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Clemens*, 615 F.3d at 379. Only "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there" are relevant for this analysis. *Walden*, 571 U.S. at 285.

Minimum contacts sufficient to confer specific jurisdiction exist when "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Clemens*, 615 F.3d at 379; *Panda Brandywine*, 253 F.3d at 869. A defendant may reasonably anticipate being haled into court in the forum state when he "purposely avails himself of the privilege of conducting activities with the forum [s]tate." *Clemens,* 615 F.3d at 379.

In the Complaint, Plaintiff states only that the Court "has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of all the Defendants in this complaint." (Dkt. #1 at p. 3). In his response, Plaintiff argues his claims are sufficient to establish specific personal jurisdiction and that discovery "would show the Defendants regularly reach into Texas and have Texas consumers that resulted from calls into Texas." (Dkt. #29 at p. 7).

1. **Partner and Orlandi**

Partner and Orlandi assert they "never purposefully directed any telephone calls or other relevant actions towards the State of Texas." (Dkt. #18 at p. 2). Plaintiff has not specifically asserted Partner or Orlandi made any of the calls listed in his Complaint or were agents of ATGC for the one call he alleges was made by ATGC. Plaintiff states in his response that he "can allege that the calls in question were on behalf of [Partner and Orlandi]" and that he "can certainly allege that [Partner and Orlandi] are vicariously liable even if they didn't directly place the calls at issue." (Dkt. #29 at p. 3). Notably, Plaintiff does not argue that he has made these allegations in his Complaint—only that he "can."

In the Complaint, Plaintiff insinuates, without reasoning or support, that Partner is "implicated" because the envelope containing a cancer screening kit—which he received from a high school acquaintance, not from any Defendant, and was mailed to "Leland [McRae]" in Wichita, Kansas—was "addressed from Partner First, LLC," and a pre-paid envelope inside was "addressed to Partner First, LLC. . . ." *See* (Dkt. #1 at p. 7). Plaintiff does not explain how this allegation demonstrates Partner directed any action toward Texas. Plaintiff's allegations do not establish Partner and Orlandi "purposely avail[ed]" themselves of any activities connected with Texas, or even any connection with Plaintiff himself. *Clemens*, 615 F.3d at 379.

2. **Specialty and the Fluitts**

Specialty and the Fluitts contend Plaintiff has alleged no specific facts that they made any calls to Plaintiff or that anyone made calls on their behalf. *See* (Dkt. #25 at p. 18). Indeed, Plaintiff's only specific allegation regarding Specialty and the Fluitts is that Specialty's address was allegedly printed on an envelope inside the package addressed to Leland McRae and sent to Wichita, Kansas, at Plaintiff's direction. *See* (Dkt. #1 at p. 7; Dkt. #18, Exhibit 2). Plaintiff further

contends the envelope is documented evidence that makes his claims more than simply conclusory. *See* (Dkt. #29 at p. 6).  Though Plaintiff states this envelope was attached to his Complaint as "Ex B," no such document was attached. *See* (Dkt. #1 at p. 7).

Plaintiff's allegations with respect to Specialty and the Fluitts are brief and unavailing. Plaintiff's only argument in his response with regard to Specialty and the Fluitts is that the fact that the package at issue contained the name of Specialty indicates calls were made for the benefit of Specialty and Fluitt. *See* (Dkt. #29 at p. 6).  Thus, Plaintiff merely rests on an assertion that Specialty and the Fluitts could benefit from the calls. Plaintiff's allegations fall woefully short of establishing Specialty and the Fluitts "purposely avail[ed]" themselves of any activities connected with Texas, or even any connection with Plaintiff himself. *Clemens*, 615 F.3d at 379.

### 3. ATGC and the Turners

ATGC and the Turners argue Plaintiff's presence in Texas is insufficient to establish personal jurisdiction. *See* (Dkt. #27 at p. 9).  Plaintiff's only assertion of specific jurisdiction is that the calls at issue "were sent by or on behalf of all the Defendants in [the Complaint]" (Dkt. #1 at p. 3).  Outside of the generic list of phone calls with no demonstrable tie to any Defendant, Plaintiff appears to only support his claim of specific jurisdiction with an allegation that he received a call from ATGC and a package he presents as connecting the call to the Defendants. *See* (Dkt. #1 at p. 7).  As previously noted, Plaintiff does not even allege ATGC purposefully directed a call to him in Texas. *See id.*

Defendants assert that the phone number at which Plaintiff claims to have received a call is a Tennessee phone number. *See* (Dkt. #18 at p. 8; Dkt. #27 at p. 7).  Plaintiff states the caller only referred to him as "Mr. [McRae]." *See* (Dkt. #1 at p. 7).  When Defendants raised the possibility that Plaintiff misrepresented himself to be Mr. McRae, Plaintiff contended in his

response that he "is permitted to impersonate someone to investigate claims" (Dkt. #29 at pp. 3–4). Further, the package label at issue—which purportedly demonstrates that Specialty, Partner, and ATGC are liable for the fourteen calls and the call from ATGC—was addressed to Mr. McRae and mailed to Wichita, Kansas. *See* (Dkt. #18, Exhibit 2). Plaintiff admits the package was mailed to Kansas at his direction. *See* (Dkt. #29 at p. 2) ("The Plaintiff told the caller to send the testing kit to Kansas, and indeed a cancer screen kit was sent to Kansas, just as the Plaintiff indicated to the overseas caller.").

Plaintiff does not deny counsel for Partner and Orlandi's affidavit testimony, which states Plaintiff represented he received the package from his high school acquaintance, Leland McRae. *See* (Dkt. #18, Exhibit 1 at pp. 2–3). Plaintiff, instead, argues ATGC "fails to explain why they mailed Leland McRae anything and where they obtained the personal, confidential information relating to Mary McRae from if not from the overseas telemarketers making illegal calls." (Dkt. #29 at p. 4). Thus, Plaintiff appears to concede ATGC did not target either Plaintiff or Texas in its alleged interaction. Moreover, though Plaintiff argues that, during "the call," he was offered genetic testing services by ATGC in the response, he claims the caller was an overseas caller, not ATGC itself. *See* (Dkt. #29 at pp. 2, 4). In addition, Plaintiff asserts that he told the caller to send the testing kit to Kansas, but the package's shipment date predates the call at issue by nine days. *Compare* (Dkt. #18, Exhibit 2; Dkt. #29 at p. 2).

Plaintiff should be aware that allegations of the nature asserted in this matter do not support a finding of personal jurisdiction. In *Cunningham v. Sunshine Consulting Group, LLC*, No. 3:16-2921, 2018 WL 3496538, at *4 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018), Plaintiff argued, like here, that a phone call from a defendant into the forum state can support a finding of personal jurisdiction. The court found an

15

allegation that Plaintiff spoke on the phone to one defendant did not support that the defendant actually called Plaintiff and an allegation that he was called by "agents" of the defendants was "vague, conclusory, and self-serving." *Id.* The court ultimately found that Plaintiff failed to satisfy the step of demonstrating purposeful availment to establish specific jurisdiction and recommended dismissal. *See id.* at *4, *6; *see also*, *Cunningham v. 360 Health Servs., LLC*, No. 4:20-cv-109, Dkt. #26 at pp. 8–11 (collecting cases in which courts have rejected similar arguments made by Plaintiff in numerous other cases).

Additionally, Plaintiff's general allegations that ATGC made calls to Texas or hired others to make calls to Texas are directly contradicted by affidavit testimony. *See* (Dkt. #27, Exhibit 1; Dkt. #27, Exhibit 2). As Plaintiff has been warned in a previous case in this District, the Court need not accept jurisdictional allegations where they are directly contradicted by a defendant's affidavit. *See Cunningham v. Guidubaldi & Assocs., LLC*, No. 4:18-cv-118-ALM-CAN, 2019 WL 1119365, at *5 (E.D. Tex. Jan. 11, 2019). ATGC and the Turners also offer affidavit testimony that: (1) none of the phone numbers cited by Plaintiff in his Complaint belong to them; (2) they have never spoofed a phone number; (3) they have no record of contact with Plaintiff, Mr. McRae, or Ms. McRae; (4) they have not contacted customers with prerecorded messages or used an automated dialing system, and have not authorized anyone to do so on their behalf; and (5) they have not directed anyone to call Plaintiff or Mr. McRae. *See* (Dkt. #27 at p. 10; Dkt. #27, Exhibit 1; Dkt. #27, Exhibit 2).

Plaintiff has not sufficiently responded to the sworn affidavit testimony presented by ATGC and the Turners. Instead, Plaintiff relies on sweeping assertions that Defendants would benefit from the alleged calls and that Defendants' names were on a package Plaintiff himself

16

directed, not to Texas, but to Kansas, and not to himself, but to Leland McRae. *See* (Dkt. #29 at p. 2; Dkt. #18, Exhibit 2).

The Court finds this case is similar to *Cunningham v. Upwell Health, LLC*, No. 4:19-cv-894-ALM-CAN, 2020 WL 4723175, at *6 (E.D. Tex. July 21, 2020), *report and recommendation adopted*, 2020 WL 4698322 (E.D. Tex. Aug. 13, 2020) (Mazzant, J.), wherein the Court dismissed claims asserted by Plaintiff, in part, for lack of specific jurisdiction. Plaintiff argued calls "were sent by or on behalf of the [d]efendants marketing to Texas residents," the defendants directed telemarketers to place calls into Texas, and the defendants knew that Texas customers would be the likely recipients of the calls. *Id.* The defendants in *Upwell* contradicted the allegations in declarations and Plaintiff failed to adequately refute the declarations and demonstrate personal jurisdiction. *Id.* Here, Plaintiff also fails to allege any facts supporting his general assertion of directing calls to Texas residents and similarly fails to support his conclusory allegations with evidence.

Even if the Court discounted the affidavits and arguments of Defendants and accepted Plaintiff's bare assertion that Defendants have business with Texas consumers, this fact alone is insufficient to establish specific personal jurisdiction. *See, e.g.*, *iMed Tech., Inc. v. Teleflex, Inc.*, No. 3:19-cv-1861-E (BK), 2020 WL 2106354, at *4 (N.D. Tex. Apr. 13, 2020) ("Indeed, Teleflex Medical and Arrow could engage in business with 100 Texas consumers—it is *Plaintiff's* cause of action that must arise out of Teleflex Medical's and/or Arrow's Texas-related contacts to support specific jurisdiction.") (emphasis in original), *report and recommendation adopted*, 2020 WL 2104174 (N.D. Tex. May 1, 2020).

Finally, the Turners also argue their status as officers or members of ATGC is insufficient to establish personal jurisdiction. *See* (Dkt. #27 at p. 11). Plaintiff does not respond to the Turners'

assertion that their status as officers or members of ATGC does not establish jurisdiction. *See* (Dkt. #29). Plaintiff merely asserts ATGC and the Turners "directed calls into Texas," and they "were the parties who were benefitting from the calls and hired the telemarketers and mailed documents as a result of the illegal telemarketing calls." *See* (Dkt. #29 at p. 3). Plaintiff states he has established sufficient allegations of the involvement of ATGC in the calls at issue by "including the mailed genetic testing documents with the complaint." *See* (Dkt. #29 at p. 4). As previously noted, Plaintiff did not attach any documents to the Complaint. *See* (Dkt. #1).

For the reasons set forth above, Plaintiff has not met his burden to establish personal jurisdiction over Defendants. *See, e.g.*, *CBC Conglomerate*, 2018 WL 4039729, at *6 ("Plaintiff must provide specific, individualized facts and/or statement of personal involvement or actions to make a *prima facie* case of personal jurisdiction.").

### C. FAIR PLAY AND SUBSTANTIAL JUSTICE

As set forth herein, the Court finds that exercising personal jurisdiction over Defendants would violate traditional notions of fair play and substantial justice. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 427–28 (5th Cir. 2005) (finding that "focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms" contravenes "traditional notions of fair play"). The fair play and substantial justice factors include: "(1) the defendant's burden; (2) the judicial state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies." *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 771 (N.D. Tex. 2007). Forcing Defendants, all non-residents of Texas who have no meaningful contacts with Texas, to defend a lawsuit in Texas when Plaintiff has not supported allegations that Defendants aim any conduct at Texas as compared to any other

state would impose an unjustified and unconstitutional burden on the Defendants. *See id*. at 773 n.5. Therefore, the Court finds that exercising personal jurisdiction over the Defendants would violate traditional notions of fair play and substantial justice.

### D.  ADDITIONAL BASES FOR DISMISSAL

Because the Court cannot exercise personal jurisdiction, it need not, and will not, consider alternative bases for dismissal.

### IV.  CONCLUSION

Therefore, Defendants Partner First, LLC, and Raymond Todd Orlandi's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Dkt. #18) is hereby **GRANTED**.

Additionally, the Motion to Dismiss Under Federal Rule of Civil Procedure 12(b) and Memorandum of Law in Support of Defendants' Motion Specialty Drug Testing, L.L.C., Susan Fluitt, and George Fluitt (Dkt. #25) is hereby **GRANTED**.

Finally, Advanced Tele-Genetic Counseling, LLC's, Motion to Dismiss, to which Jeffrey Turner and Elizabeth Turner join (Dkt. #27) is hereby **GRANTED**.

Accordingly, it is hereby **ORDERED** that this action, and all of the claims asserted therein, be **DISMISSED WITHOUT PREJUDICE**. Each party shall bear its own costs.

All relief not previously granted is hereby **DENIED**, and the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED**.
**SIGNED this 29th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE